# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

DENNIS GRAY WILLIAMS,

                    Petitioner,

vs.                                          Case No.:      3:16-cv-416-J-32MCR
                                                            3:10-cr-199-J-32MCR

UNITED STATES OF AMERICA,

                    Respondent.
_____/

## ORDER

This case is before the Court on Petitioner Dennis Gray Williams's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1, § 2255 Motion)[1] and Supporting Memorandum (Civ. Doc. 2, Memorandum), as well as Petitioner's Supplement to the § 2255 Motion (Civ. Doc. 8-1, Supplement) and his Second Motion for Leave to File Supplemental Pleading (Civ. Doc. 17, Second Motion for Leave to Supplement). The United States has responded to each. (Civ. Doc. 5, Response to § 2255 Motion; Civ. Doc. 13, Response to Supplement; Civ. Doc. 18, Response to Second Motion for Leave to Supplement). Petitioner has filed two reply briefs as well. (Civ. Doc. 7, Reply Concerning § 2255 Motion; Civ. Doc. 16, Reply Concerning Supplement). Thus, the matter is ripe for a decision.

---

[1]     Citations to the record in the underlying criminal case, United States vs. Dennis Gray Williams, No. 3:10-cr-199-J-32MCR, will be denoted "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:16-cv-416-J-32MCR, will be denoted "Civ. Doc. __."

1

Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the petition. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief). For the reasons set forth below, Petitioner's request for § 2255 relief is due to be denied.

## I.    Background

On September 15, 2010, a grand jury returned a seven-count superseding indictment against Petitioner. (Crim. Doc. 19, Superseding Indictment). Counts One through Five charged Petitioner with passing false and fictitious documents (i.e., counterfeit checks) with intent to defraud, in violation of 18 U.S.C. § 514. (Crim. Doc. 19 at 1-2). Count Six charged Petitioner with unauthorized use of an access device, in violation of 18 U.S.C. §§ 1029(a)(5), 1029(c)(1)(B), and 2. (Id. at 2-3). Count Seven charged Petitioner with failing to appear for a revocation of supervised release hearing, in violation of 18 U.S.C. §§ 3146(a)(1) and 3146(b)(1)(A)(ii). (Id. at 4).[2]

---

[2]    This case was not Petitioner's first run-in with the law. Petitioner was previously convicted of possessing counterfeit securities, unlawful use of another person's identity, and unauthorized use of an access device. See United States v. Dennis Gray Williams, No. 3:03-cr-33-J-32TEM, ECF Entry 82 (M.D. Fla.); United States v. Dennis Gray Williams, No. 3:04-cr-48-J-32TEM, ECF Entry 67 (M.D. Fla.). The Eleventh Circuit Court of Appeals affirmed those convictions in United States v. Williams, 169 F. App'x 548 (11th Cir. 2006).

Petitioner pled not guilty to the charges and proceeded to trial. (See Crim. Doc. 23, Minute Entry for Arraignment).

Petitioner waived the right to a jury trial and requested that the Court make specific findings of fact. (Crim. Doc. 75). Thus, the Court conducted a bench trial on April 18 and 19, 2011. (See Crim. Docs. 74, 76). Afterward, the Court entered findings of fact and conclusions of law, in which the Court found Petitioner guilty of all seven charges beyond a reasonable doubt. (Crim. Doc. 94, Findings of Fact and Conclusions of Law).[3] The Court incorporates the Findings of Fact and Conclusions of Law by reference.

With respect to Counts One through Five, the Court found that on four occasions, Petitioner passed counterfeit checks that used the bank account number of Laurie and Mark Gelman (whose account was held at CNL Bank), and on a fifth occasion he passed a counterfeit check using the bank account number of the Florida Heathy Kids Corporation (whose account was held at SunTrust Bank). (See Crim. Doc. 94 at 3-4) (footnotes omitted). Petitioner manufactured each of the checks by using blank check stock and check-writing software. (See id. at 3 n.3; see also Crim. Doc. 80 at 156-57; Gov't Exs. 54-59). Petitioner "d[id] not contest that any of the five checks were false, forged or counterfeit. Likewise, [Petitioner] d[id] not argue the checks did not appear to be checks issued by banks, that the banks did not operate in interstate commerce, or that he did not act with intent defraud." (Crim. Doc. 94 at 5) (footnote

---

[3]     In doing so, the Court also denied Petitioner's <u>ore</u> <u>tenus</u> motion for judgment of acquittal on all counts under Federal Rule of Criminal Procedure 29. (See Crim. Doc. 94 at 1, 22).

omitted). Rather, Petitioner's sole argument with respect to Counts One through Five was that his fraudulent conduct did not violate § 514 as a matter of law because the counterfeit checks were not "false or fictitious documents" within the meaning of § 514. (Id.); (see also Crim. Doc. 91 at 3). The Court rejected that argument, finding that wholly fake checks like the ones Petitioner manufactured and used – although resembling actual securities – fell within the meaning of "false or fictious documents" for purposes of § 514. (Crim. Doc. 94 at 10-11).

With respect to Count Six, the Court found that Petitioner used the Gelmans' bank account number and CNL Bank's routing number to make payments over the internet for such things as a Wal-Mart credit card, a cell phone bill, and a rented storage unit, and that the transactions totaled more than $11,000 over a 12-month period. (Id. at 12). Petitioner did not dispute that he "effect[ed] or cause[d] to be effected transactions from which he obtained money or property worth more than $1,000 in a 12-month period, that he did not act with the intent to defraud, or that his conduct did not affect interstate commerce." (Id. at 13). Rather, Petitioner's sole argument was that his conduct did not violate § 1029(a)(5) as a matter of law because the fraudulently-used bank account number was not an "access device" as that term is used in the statute. (Id.); (see also Crim. Doc. 91 at 4). The Court rejected this argument as well because § 1029(e)'s definition of the term "access device" includes account numbers and because the fraudulent transactions originated electronically. (Crim. Doc. 94 at 14-15).

Finally, with respect to Count Seven, the Court found that Petitioner was released on bail when he knowingly failed to appear before a judge for a revocation hearing. (Id. at 17-19). As the Court observed, "[t]he evidence at trial proved that the defendant, subsequent to an initial appearance for violating his supervised release, purposefully engaged in a course of conduct designed to prevent him from receiving notice of the final revocation hearing, including absconding to Tennessee in further violation of his release conditions." (Id. at 18-19).[4]

The Court concluded that "[t]he Government ha[d] proven defendant Dennis Gray Williams guilty beyond a reasonable doubt on all counts." (Id. at 22). As such, the Court adjudicated Petitioner guilty of the offenses charged in Counts One through Seven of the Superseding Indictment. (Id.). The case proceeded to sentencing, where the Court sentenced Petitioner to a total term of 240 months in prison. (Crim. Doc. 159, Sentencing Tr. Vol. II at 16); (Crim. Doc. 150, Judgment). The sentence consisted of concurrent terms of 228 months as to Counts One through Six and a consecutive term of 12 months as to Count Seven. (Crim. Doc. 159 at 15-16); (Crim. Doc. 150 at 2).

Petitioner appealed his convictions to the Eleventh Circuit Court of Appeals. Petitioner raised three arguments: (1) that the counterfeit checks were not "false or fictitious instruments" within the meaning of 18 U.S.C. § 514; (2) that his use of the

---

[4]      On Count Seven, the Court declined the government's invitation to find that Petitioner's failure-to-appear violation was punishable by up to ten years in prison under 18 U.S.C. § 3146(b)(1)(A)(i). (Id. at 19-22). The Court found that the failure-to-appear violation would only be punishable by a maximum of five years in prison, under § 3146(b)(1)(A)(ii), because that is what was alleged in the Superseding Indictment. (Id. at 22).

Gelmans' bank account and routing numbers to effect online transactions did not qualify as the use of an "access device" because the account number could have been found on ordinary paper checks; and (3) that violating the terms of supervised release was "not a sufficient predicate offense to support his conviction for failure to appear under § 3146." United States v. Williams, 790 F.3d 1240, 1242 (11th Cir. 2015).

The Eleventh Circuit rejected each argument. Regarding Petitioner's first argument, the court held that 18 U.S.C. § 514(a) "unambiguously applies to Williams's conduct" and that in the context of § 514, the words "false" and "fictitious" "make[ ] clear that the statute applies to the passing of wholly fake checks such as the ones at issue here." Williams, 790 F.3d at 1245-46 (citing Wachovia Bank, N.A. v. United States, 455 F.3d 1261, 1267 (11th Cir. 2006)). Second, the court held that Petitioner's use of the Gelmans' bank account number to make online payments qualified as the unauthorized use of an access device because (1) § 1029(e)'s definition of "access device" includes account numbers and (2) the fraudulent online transactions were entirely electronic, so they fell outside a narrow exception in § 1029(e) for "transfer[s] originat[ing] solely by paper instrument." Williams, 790 F.3d at 1250. Finally, regarding Petitioner's third argument, the government conceded that violating the terms of supervised release, on its own, is not a predicate offense that can support a conviction for failure-to-appear under 18 U.S.C. § 3146. Id. at 1251. However, the Eleventh Circuit held that the original convictions underlying the term of supervised release (i.e., Petitioner's prior convictions for credit card fraud and check fraud) were sufficient predicate offenses to support a conviction for failure-to-appear. Id. at 1251-

52. As such, the Eleventh Circuit affirmed Petitioner's convictions and sentence. Id. at 1252.

Petitioner filed a pro se petition for rehearing en banc and panel rehearing, accompanied by a motion for leave to file a pro se petition for rehearing. United States v. Williams, No. 13-13042-DD (11th Cir.), ECF Entries of July 17, 2015; (see also Civ. Doc. 2-1, Motion for Leave to File Pro Se Petition for Rehearing). The Eleventh Circuit denied rehearing, United States v. Williams, No. 13-13042-DD (11th Cir.), ECF Entry of Aug. 25, 2015, and issued the mandate, id., ECF Entry of Sep. 2, 2015. Petitioner sought a writ of certiorari from the United States Supreme Court, but the Supreme Court denied the writ. Williams v. United States, 136 S. Ct. 918 (2016).

## II.    Petitioner's Arguments

Petitioner timely filed the § 2255 Motion and accompanying Memorandum, in which he raises four arguments. First, in Ground One(A), Petitioner argues that trial counsel was ineffective because he failed "to challenge [the] government's improper influencing of the grand jury." (Civ. Doc. 1 at 4; Civ. Doc. 2 at 9-16). Second, in Ground One(B), Petitioner claims that appellate counsel gave ineffective assistance by failing to argue "that the Court's findings and verdict conflicted with the government's proven evidence at trial." (Civ. Doc. 1 at 4; Civ. Doc. 2 at 17-21). Third, in Ground Two, Petitioner claims he was deprived of the assistance of appellate counsel under the Eleventh Circuit's CJA plan because appellate counsel failed to file a petition for panel rehearing or rehearing en banc. (Civ. Doc. 1 at 4; Civ. Doc. 2 at 21-25). Finally, in Ground Three, Petitioner argues that the Court lacked subject matter jurisdiction

because the government failed to prove that SunTrust Bank and CNL Bank were federally insured institutions. (Civ. Doc. 1 at 4; Civ. Doc. 2 at 26-31). The United States contends that each of these claims lacks merit. (See Civ. Doc. 5).

Later, the Court allowed Petitioner to supplement his § 2255 Motion with two additional claims. (Civ. Doc. 11). In the Supplement, Petitioner argues that 18 U.S.C. §§ 514 and 1029(e)(1) are void for vagueness and therefore susceptible to arbitrary enforcement. (Civ. Doc. 8-1). The government responds that the supplemental claims lack merit as well. (Civ. Doc. 13).

Petitioner next filed the Second Motion for Leave to Supplement, in which he claims he had diminished mental capacity due to sleep apnea. (Civ. Doc. 17; Civ. Doc. 17-1). The United States responds that the Court should deny the Second Motion for Leave to Supplement as futile. (Civ. Doc. 18).

## III. Law

### A. 28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through

collateral attack. <u>United States v. Addonizio</u>, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. <u>United States v. Teague</u>, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

### B. Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both (1) that counsel's performance was deficient, and (2) that as a result of counsel's deficient performance, the petitioner suffered prejudice. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). In determining whether counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. <u>Weeks v. Jones</u>, 26 F.3d 1030, 1036 (11th Cir. 1994). The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." <u>Id.</u> To show that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. <u>Id.</u> at 1036-37 (citing <u>Strickland</u>, 466 U.S. at 694). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. <u>Strickland</u>, 466 U.S. at 694. In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. <u>Id.</u> at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Id.</u> at 697; <u>see also</u>

Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

## C. Procedural Default

"Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citing United States v. Frady, 456 U.S. 152, 165 (1982)). "Under the procedural default rule, 'a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.'" McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011) (quoting Lynn, 365 F.3d at 1234). "This rule generally applies to all claims, including constitutional claims." Lynn, 365 F.3d at 1234 (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).[5]

A petitioner may avoid a procedural default either by showing (1) cause for and actual prejudice from the default, or (2) that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). With respect to "cause and prejudice," "to show cause for procedural default, [a petitioner] must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [the petitioner's] own

---

[5]     However, claims of ineffective assistance of counsel need not be raised on direct appeal. Massaro v. United States, 538 U.S. 500, 508-09, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).

conduct." Id. at 1235 (citing Smith v. Jones, 256 F.3d 1135, 1145 (11th Cir. 2001)). Ineffective assistance of counsel may constitute cause for a procedural default, but only if the ineffective assistance claim has merit. United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000). Petitioner must also show that "actual prejudice" resulted from the claim not being raised on direct appeal. Lynn, 365 F.3d at 1234 (citing Bousley v. United States, 523 U.S. 614, 622 (1998)). The second exception, actual innocence, "is exceedingly narrow in scope as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted). "To show actual innocence of the crime of conviction, a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of the new evidence of innocence." McKay, 657 F.3d at 1196 (quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). The actual innocence exception is supposed to "remain 'rare' and … only be applied in the 'extraordinary case.'" Schlup, 513 U.S. at 321.

## IV.  Discussion

### A. Ground One (A): Ineffective Assistance Regarding Grand Jury Proceedings

Petitioner claims the Superseding Indictment was tainted by government misconduct during the grand jury proceedings. Specifically, Petitioner claims there were nine questions or question-and-answer exchanges between the prosecutor and the government's witness, a secret service agent, that prejudiced the grand jury. Those questions were as follows:

1. Question: "Okay, were you aware that Williams – Dennis Williams was on supervised release for a prior federal conviction?"

2. Question: "And is it something – a period of supervision that you serve after a prison sentence?"

(Civ. Doc. 2 at 10) (citing July 22, 2010 Grand Jury Transcript at 14-15).[6]

3. Question: "And from speaking to me, do you know what the maximum sentence is that Dennis Williams faced if he was found guilty of the violations of supervised release?"

(Civ. Doc. 2 at 11) (citing July 22, 2010 Grand Jury Transcript at 17).

4. Question: "[A]re you aware of the circumstances of Dennis Williams being arrested after his failure to appear?" …
   Answer: "Yes."

5. Question: "And how are you aware of those circumstances?"
   Answer: "I was contacted by the United States Marshals. They arrested him in Knoxville, Tennessee."

(Civ. Doc. 2 at 12-13) (citing July 22, 2010 Grand Jury Transcript at 19).

6. Question: "And several of these entries are for Wal-Mart and they're in varying amounts, but generally about $300 or so each. Let me ask you this. When Mr. Williams was arrested in Knoxville, Tennessee – I think we talked about this last time about his arrest – but did he have certain personal property on him and in his vehicle?"
   Answer: "Yes, he did."

7. Question: "And the arresting officer, did he provide you with copies of that evidence?
   Answer: "Yes, he did."

8. Question: "Was at least one of the – were some of the things he provided credit cards?"
   Answer: "Yes."

9. Question: "Was at least one of them a Wal-Mart card?"
   Answer: "Yes, it was."

---

[6] Petitioner did not provide copies of the grand jury transcripts. However, the Court assumes for the sake of argument that the transcript citations are accurate.

(Civ. Doc. 2 at 13-14) (citing Sep. 15, 2010 Grand Jury Transcript at 8-9).

Petitioner argues that Questions 1 and 2 unnecessarily prejudiced the jury by referring to Petitioner's prior federal conviction and prison sentence. (Civ. Doc. 2 at 10-11). Petitioner claims it was unnecessary for the prosecutor to refer to the potential prison sentence in Question 3. (Id. at 11). Petitioner claims that Questions 4 and 5, pertaining to his arrest in a different state, had "absolutely nothing whatsoever to do with establishing probable cause for failure to appear." (Id. at 12). And Petitioner argues that Questions 6 through 9 were likewise irrelevant and prejudicial. (Id. at 14-15). Altogether, Petitioner claims "that the prosecutor's conduct so overbore the will of the grand jury that he was denied his Fifth Amendment grand jury right," (id. at 15), and that counsel was ineffective for failing to seek dismissal of the indictment, (id. at 15-16).

"'A prosecutor is ... forbidden to make improper suggestions, insinuations and assertions calculated to mislead the jury' and may not appeal to the jury's passion or prejudice." United States v. Rodriguez, 765 F.2d 1546, 1560 (11th Cir. 1985) (quoting United States v. Phillips, 664 F.2d 971, 1030 (5th Cir. Unit B 1981)). "When the alleged prosecutorial misconduct occurs in the context of a grand jury proceeding," a district court should dismiss the indictment "only when the misconduct 'substantially influenced the grand jury's decision to indict' or when there is 'grave doubt that the decision to indict was free from the substantial influence of such violations.'" United States v. Cavallo, 790 F.3d 1202, 1219 (11th Cir. 2015) (quoting Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988)).

13

As the United States rightly points out, none of the nine questions cited by Petitioner were unduly prejudicial. (See Civ. Doc. 5 at 6-10). Questions 1 through 5 were each relevant to establishing probable cause on the failure-to-appear charge. By its nature, the failure-to-appear charge required the government to establish the context, i.e., that Petitioner failed to appear for a revocation hearing, which necessarily implies that Petitioner had been previously convicted. Question 3, regarding the maximum sentence Petitioner faced, was also relevant to establishing the applicable penalty provision under 18 U.S.C. § 3146(b)(1)(A). Thus, these questions were not improper or inflammatory. Questions 6 through 9, concerning Petitioner's possession of a Wal-Mart card and other property when he was arrested, were relevant to establishing probable cause to charge Petitioner with unauthorized use of an access device. The unauthorized access charge was partly based on Petitioner's unauthorized access to another person's bank account number to pay balances on a Wal-Mart credit card. (See Crim. Doc. 19 at 2-3). To borrow the government's words, Petitioner's "possession of that card when he was arrested tended to show that he, and not someone else, had accessed the checking account to pay the balances." (Civ. Doc. 5 at 10). Thus, none of the grand jury questions cited by Petitioner were improper or inflammatory.

Moreover, even if some of the prosecutor's questions were improper, this Court's guilty verdict "rendered harmless any conceivable error in the charging decision that might have flowed from the violation." United States v. Mechanik, 475 U.S. 66, 73 (1986). That this Court, following a bench trial, rendered a "verdict of guilty beyond a

14

reasonable doubt demonstrates a fortiori that there was probable cause to charge [Petitioner] with the offenses for which [he was] convicted." Id. at 67. See also United States v. Flanders, 752 F.3d 1317, 1333 (11th Cir. 2014) ("Thus, the petit jury's guilty verdicts demonstrate that there was probable cause to charge Defendants with the offenses for which they were convicted, and any alleged misconduct before the grand jury was harmless."). The guilty verdict establishes that even if one or more of the government's remarks were inappropriate, the remarks did not cause the grand jury to return an indictment where probable cause did not otherwise exist. Petitioner therefore was not prejudiced.

Accordingly, trial counsel's decision not to object to the government's grand jury questions was neither deficient nor prejudicial. Petitioner is not entitled to relief on this ground.

## B. Ground One (B): Ineffective Assistance of Appellate Counsel For Not Challenging the Court's Factual Findings

Petitioner next argues that appellate counsel gave ineffective assistance by failing to argue "that the Court's findings and verdict conflicted with the government's proven evidence at trial." (Civ. Doc. 1 at 4). Petitioner claims that the Court's Findings of Facts and Conclusions of Law "contained numerous errors of facts regarding Counts One through Five of the superseding indictment." (Civ. Doc. 2 at 17). Specifically, Petitioner complains that the Court misdescribed the charged offenses as "passing counterfeit checks" (which Petitioner says is an offense under 18 U.S.C. § 513) rather than passing false or fictitious documents. (Id. at 17-18). Petitioner recognizes that the Court explained that counterfeit checks are false or fictitious documents for purposes

15

of 18 U.S.C. § 514. (Id. at 19) (citing Crim. Doc. 94 at 11). But Petitioner argues that the Court erred by equating counterfeit checks with false or fictitious documents under § 514. (See id. at 20-21). Thus, on closer inspection, what Petitioner actually argues is that the Court erred as a matter of law by equating the counterfeit checks at issue with "false or fictitious documents" under § 514. Petitioner argues that appellate counsel should have raised this issue on direct appeal.

The record refutes this claim. The foremost issue on appeal was whether the facts proved that Petitioner had violated § 514. See Williams, 790 F.3d at 1242, 1244-45. "Williams argue[d] that the district court erred in finding that his conduct was sufficient to support a conviction under 18 U.S.C. § 514. Specifically, Williams contend[ed] that the fraudulent checks at issue, while admittedly counterfeited, were not 'false or fictitious' instruments within the meaning of § 514." Id. at 1244–45. The Eleventh Circuit rejected the argument, finding that the term "false or fictious instrument" "applies to the passing of wholly fake checks such as the ones at issue here." Id. at 1246. Thus, contrary to Petitioner's claim, appellate counsel did in fact challenge the Court's finding of guilt based on the application of § 514 to the counterfeit checks at issue, even though the argument proved unsuccessful. This claim therefore does not merit relief.

### C. Ground Two: Ineffective Assistance of Appellate Counsel Under the Eleventh Circuit's CJA Plan

In Ground Two, Petitioner argues that appellate counsel gave ineffective assistance by failing to petition the Eleventh Circuit for panel rehearing or rehearing en banc. Petitioner claims that appellate counsel was unsure whether his appointment

under the Eleventh Circuit's CJA plan required him to file a petition for rehearing. (Civ. Doc. 2 at 21). Petitioner claims that after the Eleventh Circuit issued its opinion, he requested that appellate counsel file a petition for rehearing, but that counsel failed to do so and failed to communicate with him. (Id. at 22, 23). As such, Petitioner filed a pro se petition for rehearing, which the Eleventh Circuit denied. See United States v. Williams, No. 13-13042-DD (11th Cir.), ECF Entries of July 17, 2015 and August 25, 2015. Petitioner contends that under 18 U.S.C. § 3006A, appellate counsel was required to file a petition for rehearing and that he was denied the assistance of counsel. As the remedy, Petitioner cites Wilkins v. United States, 441 U.S. 468 (1979), and argues the Eleventh Circuit should recall the mandate and appoint an attorney to file a counseled petition for rehearing en banc. (Civ. Doc. 2 at 22-24).

The Court cannot grant relief on this claim for several reasons. For one, the claim does not state a constitutional violation. The right to counsel guaranteed by the Sixth Amendment only extends through direct appeals as of right. Evitts v. Lucey, 469 U.S. 387, 393 (1985) ("This right to counsel is limited to the first appeal as of right…") (citing Ross v. Moffitt, 417 U.S. 600 (1974)). "[A] defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction…." Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); see also Wainwright v. Torna, 455 U.S. 586, 587-88 (1982). Thus, for example, a defendant has no constitutional right to counsel in requesting a writ of certiorari from the Supreme Court because certiorari review is discretionary. Ross, 417 U.S. at 616-18. Likewise, panel rehearing and rehearing en banc are discretionary appeals, not part of the

appeal as of right. See Fed. R. App. P. 35, Adv. Comm. Note, 1988 Amend., Subdivision (a) (noting the discretionary nature of en banc rehearing); Fed. R. App. P. 40(a)(4) (upon receiving a petition for panel rehearing, the court "may" take any of the following actions: make a final disposition without reargument, restore the case to the calendar for reargument, or "issue any other appropriate order."). As the Eleventh Circuit once explained:

> appellate courts are not required to take the extraordinary step of granting en banc review in order to re-adjudicate every issue involving each claim or defense a litigant presents. If they were, en banc review would be granted in every case. The question before the house is … how our discretionary power to sit as an en banc court should be exercised.

Boxer X v. Harris, 459 F.3d 1114, 1116 (11th Cir. 2006) (Carnes, E., J., respecting denial of rehearing en banc). Because panel rehearing and rehearing en banc are discretionary, Petitioner had no constitutional right to counsel in seeking rehearing. Paulk v. United States, No. 11-cv-80768-RYSKAMP, 2012 WL 13069818, at *13 (S.D. Fla. Mar. 5, 2012) (finding that § 2255 movant had no right to counsel in moving for rehearing or filing a petition for writ of certiorari); Pitts v. United States, No. 11-60575-CIV-COHN, 2011 WL 5025097 (S.D. Fla. Sep. 6, 2011) (same). And "[s]ince [Petitioner] had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his [appointed] counsel's failure to file" a petition for rehearing. Torna, 455 U.S. at 587–88.

Second, contrary to Petitioner's suggestion that counsel was required to file a petition for rehearing merely at his request, the Eleventh Circuit's CJA plan does not impose such an obligation. The CJA plan requires counsel to do the following things

upon receiving an adverse decision: (1) inform the client of the right to petition the Eleventh Circuit for a panel rehearing or rehearing en banc, or to petition the Supreme Court for certiorari review; and (2) to file such a petition, but only if (a) the defendant requests such a petition in writing, and (b) "in counsel's considered judgment sufficient grounds exist." 11th Cir. CJA Plan, Addendum Four, § (f)(5). Petitioner does not claim that counsel failed to advise him of the Eleventh Circuit's adverse decision, or that counsel failed to notify him of the right to seek rehearing or certiorari review. (See Civ. Doc. 2 at 21-25). Rather, Petitioner faults appellate counsel for not filing a requested petition for rehearing. But the Eleventh Circuit's CJA plan only requires counsel to petition for rehearing if, in counsel's judgment, adequate grounds exist for seeking rehearing. In light of the panel's detailed explanation for its ruling in Williams, 790 F.3d 1240, counsel could reasonably have determined that sufficient grounds did not exist to pursue rehearing.

Finally, even if Petitioner's claim had merit, this Court lacks authority under § 2255 to implement the remedy Petitioner requests. Petitioner cites Wilkins, 441 U.S. 468, for the proposition that to remedy appellate counsel's alleged breach of his duties under the CJA plan, the Eleventh Circuit should vacate the judgment, recall the mandate, and schedule a rehearing. However, this Court lacks the power to order vacatur of the Eleventh Circuit's judgment, to recall the Eleventh Circuit's mandate, or to order a rehearing.[7] Accordingly, Petitioner's allegations in Ground Two lack

---

[7]     In any event, "[t]he Wilkins remedy stems from appointed counsel's duties under CJA plans, and not from any constitutional right to effective assistance in seeking discretionary relief before the Supreme Court." Paige v. United States, No.

merit, and even if they were meritorious, the Court could not grant Petitioner the relief he seeks. As such, Ground Two is due to be denied.

### D. Ground Three: Whether the Court Lacked Subject Matter Jurisdiction to Convict and Sentence Petitioner

Petitioner argues that with respect to Counts One through Five of the Superseding Indictment, the United States failed to prove a nexus with interstate commerce because the government failed to prove that CNL Bank and SunTrust Bank were federally insured institutions at the time of the offenses. (Civ. Doc. 1 at 4; Civ. Doc. 2 at 25-31). Petitioner apparently recognizes that he failed to raise this claim on direct appeal. (See Civ. Doc. 2 at 26). However, Petitioner attempts to avoid the procedural default by characterizing the interstate commerce element as relating to the Court's subject matter jurisdiction. (Id.). Because a challenge to a court's subject matter jurisdiction cannot be defaulted, Petitioner's argument goes, he can still bring a claim that the government failed to prove the interstate commerce element of Counts One through Five.

It is true that subject matter jurisdiction, meaning "the court's statutory or constitutional power to adjudicate the case," can never be waived or forfeited. United States v. Cotton, 535 U.S. 625, 630 (2002) (internal citation omitted). But Petitioner is wrong to characterize an alleged lack of proof on the interstate commerce element as depriving the Court of subject matter jurisdiction. The Eleventh Circuit has rejected the theory "that a failure of allegation or proof on an interstate-commerce element

---

8:02-CR-508-T-17MSS, 2009 WL 700659, at *10 n.7 (M.D. Fla. Mar. 16, 2009) (citing Austin v. United States, 513 U.S. 5 (1994)).

deprives the district court of jurisdiction." <u>Alikhani v. United States</u>, 200 F.3d 732, 735 (11th Cir. 2000).

> An effect on interstate commerce may be required for Congress to have authority under the Commerce Clause to forbid certain conduct. <u>See</u> <u>United States v. Lopez</u>, 514 U.S. 549, 562, 115 S. Ct. 1624, 1631, 131 L.Ed.2d 626 (1995). But to this court and at least one other, that does not imply that a district court faced with an insufficient interstate-commerce nexus loses subject-matter jurisdiction of the case. <u>See</u> <u>United States v. Viscome</u>, 144 F.3d 1365, 1370 (11th Cir.) ("Appellant Viscome also attacks the sufficiency of the government's evidence regarding the interstate nexus element. However, Viscome's guilty plea waived all non-jurisdictional defects in the proceedings against him; and Viscome's sufficiency of the evidence challenge is non-jurisdictional."), <u>cert. denied</u>, 525 U.S. 941, 119 S. Ct. 362, 142 L.Ed.2d 299 (1998); <u>United States v. Martin</u>, 147 F.3d 529, 532 (7th Cir. 1998) ("[O]nce a defendant pleads guilty in '[a] court which has jurisdiction of the subject matter and of the defendant, as did the court in the instant case,' the court's judgment cannot be assailed on grounds that the government has not met its burden of proving 'so-called jurisdictional facts.'" (quoting <u>United States v. Hoyland</u>, 264 F.2d 346, 352–53 (7th Cir. 1959)).

<u>Alikhani</u>, 200 F.3d at 735. Thus, Eleventh Circuit precedent forecloses Petitioner's effort to characterize an alleged failure of proof on the interstate commerce element as depriving the Court of subject matter jurisdiction. "So long as the indictment charges the defendant with violating a valid federal statute as enacted in the United States Code, it alleges an 'offense against the laws of the United States' and, thereby, invokes the district court's subject-matter jurisdiction" under 18 U.S.C. § 3231. <u>United States v. Brown</u>, 752 F.3d 1344, 1354 (11th Cir. 2014) (citing <u>Alikhani</u>, 200 F.3d at 734-35). Here, the Superseding Indictment charged Petitioner with violating 18 U.S.C. § 514 – a valid criminal statute in the United States Code – in language closely tracking § 514. <u>Compare</u> Crim. Doc. 19 at 1-2 <u>with</u> 18 U.S.C. § 514(a). By doing so, the Superseding Indictment did all that was needed to give the Court jurisdiction over the

offenses alleged in Counts One through Five. <u>Brown</u>, 752 F.3d at 1354.

Because the alleged lack of proof on the interstate commerce element does not implicate the Court's subject matter jurisdiction, the claim boils down to a challenge to the sufficiency of the evidence. <u>United States v. Ratigan</u>, 351 F.3d 957, 963-64 (9th Cir. 2003) (alleged lack of proof that the bank was FDIC-insured went to the sufficiency of the evidence, not the district court's subject matter jurisdiction). As a challenge to the sufficiency of the evidence, Petitioner could and should have raised this claim at trial or on direct appeal. But Petitioner did neither. Instead, as the Court noted in the Findings of Fact and Conclusions of Law, Petitioner "d[id] not argue the checks did not appear to be checks issued by banks, [or] that the banks did not operate in interstate commerce…." (Crim. Doc. 94 at 5). Therefore, Petitioner is procedurally barred from using § 2255 to challenge, for the first time, the sufficiency of the evidence on the interstate commerce element. <u>McKay</u>, 657 F.3d at 1196; <u>Lynn</u>, 365 F.3d at 1232.[8] Ground Three is denied.

### E. Supplemental Claims

In a supplement to the § 2255 Motion, Petitioner claims that 18 U.S.C. § 514(a) and § 1029(e)(1) are unconstitutionally vague. (Civ. Doc. 8-1). Section 514 states, in pertinent part, that anyone who:

> with the intent to defraud ... draws, prints, processes, produces, publishes, or otherwise makes ... [or] passes, utters, presents, [or] offers ... any false or fictitious instrument, document, or other item appearing, representing, purporting, or contriving through scheme or artifice, to be an actual security or other financial instrument issued under the

---

[8]     In any event, there was sufficient evidence that the institutions were FDIC-insured.

authority of the United States ... or an organization, shall be guilty of a class B felony.

18 U.S.C. § 514(a). Petitioner claims § 514 is impermissibly vague because (1) the statute fails to define "false or fictitious instrument," (2) the statute does not define the offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited," and (3) the manner in which the statute is applied encourages arbitrary enforcement. (Civ. Doc. 8-1 at 2).

Section 1029(e)(1) defines the term "access device" to mean:

any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument).

18 U.S.C. § 1029(e)(1). Petitioner claims that § 1029(e)(1) is unconstitutionally vague because (1) "the statute fails to provide a person of ordinary intelligence fair notice of what is prohibited," and (2) "the statute is so standardless that it authorizes and encourages seriously discriminatory enforcement." (Civ. Doc. 8-1 at 2).

Petitioner recognizes that he procedurally defaulted these claims, but asserts in conclusory fashion that he can avoid the default because a miscarriage of justice occurred and that appellate counsel was ineffective for failing to raise the claims. (Id. at 17-18). The United States responds that appellate counsel was not ineffective for not raising these claims because §§ 514(a) and 1029(e)(1) are not unconstitutionally vague. (Civ. Doc. 13).

Petitioner procedurally defaulted his void-for-vagueness claims. If Petitioner

wished to argue that §§ 514(a) or 1029(e)(1) were unconstitutionally vague, he could and should have raised these issues before this Court and on direct appeal. But because Petitioner failed to do so, he is procedurally barred from using § 2255 to raise these claims for the first time. <u>McKay</u>, 657 F.3d at 1196; <u>Lynn</u>, 365 F.3d at 1234.

Petitioner attempts to avoid the default by alleging, in a conclusory manner at the end of the Supplement, that appellate counsel was ineffective for not raising the void-for-vagueness claims on direct appeal. (Civ. Doc. 8-1 at 18). However, Petitioner does not elaborate on how it was objectively unreasonable under <u>Strickland</u> for appellate counsel not to raise the void-for-vagueness claims. Petitioner raised no void-for-vagueness challenge before this Court, so the issue was unpreserved.[9] As such, appellate counsel would have had to overcome the plain error standard of review to succeed on a vagueness challenge. <u>See</u> <u>United States v. Rodriguez</u>, 398 F.3d 1291, 1298 (11th Cir. 2005) ("Because Rodriguez did not object on this basis in the district court, our review is only for plain error.") (citation omitted). Under the plain error standard, "[a]n appellate court may not correct an error the defendant failed to raise in the district court unless there is: '(1) error, (2) that is plain, and (3) that affects substantial rights.'" <u>Id.</u> (quoting <u>Cotton</u>, 535 U.S. at 631). Petitioner points to no authority that appellate counsel could have relied on to establish that §§ 514(a) or 1029(e)(1) are plainly unconstitutionally vague. This Court has found no authority holding – or even implying – that either statute is void for vagueness. To the contrary, at least one

---

[9]     Petitioner makes no assertion that <u>trial</u> counsel was ineffective for not raising a void-for-vagueness objection before this Court. (Civ. Doc. 8-1 at 18).

circuit court of appeals has rejected a vagueness challenge to § 514 and another circuit

has rejected a vagueness challenge to § 1029(e)(1). <u>United States v. Howick</u>, 263 F.3d

1056, 1068 & n.6 (9th Cir. 2001) (rejecting a vagueness challenge to § 514); <u>United

States v. Lee</u>, 815 F.2d 971, 973-74 (4th Cir. 1987) (rejecting a vagueness challenge to

§ 1029(e)(1)'s definition of the term "access device"). Under the circumstances,

appellate counsel could reasonably have decided not to raise a void-for-vagueness

challenge to either statute, especially given that the plain error standard would have

applied. <u>See</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009) (appellate

counsel has no duty to raise every non-frivolous issue and may reasonably weed out

weaker, albeit meritorious, arguments). Therefore, Petitioner has not shown that the

ineffective assistance of appellate counsel constitutes cause for the default.

Petitioner also attempts to overcome the default by asserting that a miscarriage

of justice occurred. (Civ. Doc. 8-1 at 18). "[T]he term 'miscarriage of justice' means that

the defendant is actually innocent." <u>United States v. Olano</u>, 507 U.S. 725, 736 (1993)

(citing <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339-40 (1992)). "Actual innocence" means

innocence in fact, not mere legal insufficiency. <u>McKay</u>, 657 F.3d at 1197 (citing, <u>inter

alia</u>, <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998)). But Petitioner offers no facts

or argument, beyond his conclusory assertion that a miscarriage of justice occurred, to

support a claim of actual innocence. As such, the actual innocence exception cannot

save Petitioner's void-for-vagueness challenge from the procedural default.

Moreover, the Eleventh Circuit implicitly rejected the notion that §§ 514 or

1029(e)(1) are impermissibly vague. With respect to § 514, the court found that the

statute "unambiguously applies to Williams's conduct." <u>Williams</u>, 790 F.3d at 1245-46. The court said that while "the terms 'false' and 'fictitious' may have multiple meanings standing alone, their use within the context of § 514 makes clear that the statute applies to the passing of wholly fake checks such as the ones at issue here." <u>Id.</u> at 1246. The court further said that "[t]he statutory definition of 'security' also makes plain that § 514 allows for the prosecution of wholly fake checks such as those passed by Williams." <u>Id.</u> The court implicitly rejected Petitioner's arbitrary enforcement argument as well, observing:

> Furthermore, even assuming that the checks passed by Williams were "counterfeited" securities and thus able to be prosecuted under § 513, nothing in either § 513 or § 514 requires that Williams's conduct be prosecuted exclusively under § 513. Indeed, it is common for a defendant's conduct to be subject to prosecution under different criminal statutes. <u>See</u> <u>Pasquantino v. United States</u>, 544 U.S. 349, 358 n. 4, 125 S. Ct. 1766, 1773 n.4, 161 L.Ed.2d 619 (2005) ("The Federal Criminal Code is replete with provisions that criminalize overlapping conduct. The mere fact that two federal criminal statutes criminalize similar conduct says little about the scope of either." (internal citations omitted)); <u>United States v. Batchelder</u>, 442 U.S. 114, 123–25, 99 S. Ct. 2198, 2204–05, 60 L.Ed.2d 755 (1979) (stating that, unless motivated by inappropriate considerations such as race or religion, prosecutors are free to elect one criminal statute over another, even if the former statute bears harsher penalties for similar conduct).

<u>Id.</u> The court concluded that because "the plain language of § 514 criminalizes Williams's conduct … there is no need for this Court to consult the statute's legislative history," <u>id.</u> at 1247,[10] and that because "the plain language of § 514 criminalizes Williams's conduct … the rule of lenity does not require this Court to forego a common-

---

[10]     Nevertheless, the Eleventh Circuit examined § 514's legislative history and found that the legislative history also did not support Petitioner's argument that § 514 does not apply to passing wholly fake checks. <u>Id.</u> at 1248-49.

sense reading of § 514 in favor of a more narrow interpretation," id. at 1249.

Similarly, the court implicitly rejected the notion that § 1029(e)(1)'s definition of "access device" is vague or unclear. The court observed that "the definition of 'access device' plainly includes account numbers, and the modifier 'any' leaves little doubt that routing/bank account numbers fall within the ambit of § 1029." Id. at 1250. Thus, the Eleventh Circuit's opinion leaves little doubt that the court found nothing vague or indefinite about §§ 514(a) and 1029(e)(1) as applied in Petitioner's case.

Accordingly, Petitioner's supplemental claim that §§ 514 and 1029(e)(1) are unconstitutionally vague fails under any measure. The claim is procedurally defaulted and lacking in merit. Petitioner is thus not entitled to relief on these grounds.

### F. Second Motion for Leave to Supplement (Civ. Doc. 17)

Finally, Petitioner filed a second "Motion for Leave to File Supplemental Pleading" (Civ. Doc. 17) and proposed supplemental claim (Civ. Doc. 17-1). Petitioner claims he has "newly discovered evidence" that he suffers from sleep apnea, which he suggests caused him to suffer from diminished mental capacity throughout his adult life. That, in turn, allegedly relieves him of culpability for his lengthy criminal record, including the fraudulent check scheme for which he was convicted here. Based on this "newly discovered evidence," Petitioner moves for a new trial under Fed. R. Crim. P. 33(b), or alternatively, to supplement the § 2255 Motion.

### 1. Federal Rule of Criminal Procedure 33(b)

Rule 33(b) provides in pertinent part that "[a]ny motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding

of guilty." Fed. R. Crim. P. 33(b)(1). Petitioner opted for a bench trial in this case, and on September 21, 2011, the Court found Petitioner guilty of Counts One through Seven of the Superseding Indictment. (Crim. Doc. 94).

Petitioner filed the instant motion on January 4, 2017 (see Civ. Doc. 17-1 at 15), more than five years after the finding of guilt. Thus, the motion is untimely under Fed. R. Crim. P. 33(b)(1). Petitioner contends that the three-year limitations period should be equitably tolled because of "extraordinary circumstances that were beyond Petitioner's control," but he never explains what those circumstances were or how they prevented him from discovering his sleep apnea earlier. (Civ. Doc. 17-1 at 8). In fact, Petitioner alleges (though he does not prove) that "he has been suffering with this condition for an extremely long period of time" (id. at 4), including throughout the duration of his criminal conduct (id. at 9). If Petitioner has been suffering from sleep apnea for so long, there is no reason why he could not have learned of his condition sooner with reasonable diligence. Accordingly, Petitioner is not entitled to equitable tolling of Rule 33(b)(1)'s limitations period.

### 2. Proposed Supplement to § 2255 Motion

Alternatively, Petitioner moves to supplement his § 2255 Motion with the claim that sleep apnea caused him to experience diminished mental capacity. Petitioner contends that had he presented evidence of his sleep apnea at trial, (1) he could have used a diminished-capacity defense to defeat a showing that he acted with the

requisite mens rea[11]; (2) he would have requested hospitalization as an alternative to incarceration, pursuant to 18 U.S.C. § 4244, and (3) he would have asked for a downward departure under U.S.S.G. §§ 5H1.3 (concerning mental and emotional conditions) and 5K2.13 (concerning diminished capacity).

The Eleventh Circuit has "accepted a policy of liberal amendments and supplements to the pleadings under Rule 15 [Federal Rules of Civil Procedure]." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 182 F. App'x 921, 924-25 (11th Cir. 2006) (citing Harris v. Garner, 216 F.3d 970, 984 (11th Cir. 2000)). Nevertheless, a court may deny a motion to supplement if the supplemental pleading would be futile. Vanderberg v. Donaldson, 259 F.3d 1321, 1326 (11th Cir. 2001). Leave to amend or supplement is futile if the new pleading would still be properly dismissed or immediately subject to summary judgment for the opposing party. Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).

Here, Petitioner's supplemental claim is futile for at least two reasons. For one, Petitioner's diagnosis of sleep apnea on September 6, 2016, has only tenuous relevance. (See Civ. Doc. 17-1 at 18). It does not prove that Petitioner also suffered from sleep apnea when he committed the offenses in 2009 and 2010, which is the timeframe relevant to a diminished capacity defense or a downward departure. Nor does the September 2016 diagnosis establish that Petitioner was suffering from sleep apnea during the period between the finding of guilt and sentencing, which is the

---

[11] The Court assumes, for the sake of argument, that a diminished-mental-capacity defense could apply to the counterfeit-check and access-device offenses.

timeframe relevant to requesting hospitalization under 18 U.S.C. § 4244(a). Because Petitioner offers no proof that he actually had sleep apnea during either of the relevant timeframes, his diminished capacity claim is only speculative.

Second, even if Petitioner could establish he suffered from sleep apnea during the relevant timeframes, the record refutes any suggestion that he had such diminished capacity that he could not form the requisite <u>mens rea</u>. At the sentencing hearing, Petitioner admitted that he knew his conduct was wrong when he committed the crimes (Crim. Doc. 158, Sentencing Tr. Vol. I at 52), but that he did it "to put food in [his] stomach and clothes on [his] back" (<u>id.</u> at 51). The very sophistication of Petitioner's offense belies any claim that his cognition was so impaired that he could not form the intent to defraud. <u>See</u> <u>Williams</u>, 790 F.3d at 1242-44 (describing the offense conduct). Petitioner obtained the bank account and routing numbers of unsuspecting victims, and then, using blank check stock and check-writing software, produced counterfeit checks. Petitioner then used these counterfeit checks and account numbers to make various personal purchases. Petitioner's conduct displayed a level of planning and execution that is inconsistent with the notion that he suffered from diminished mental capacity.

Moreover, Petitioner continued to appear lucid and alert at his trial. Before the bench trial began, for example, Petitioner affirmed that he understood he had the right to a jury trial, that he knowingly and freely waived that right, and that he was of sound mind to do so. (Crim. Doc. 80 at 7-10). Nor did Petitioner appear to have any sort of diminished capacity at the sentencing hearing, where he spoke coherently in

allocution. (Crim. Doc. 158 at 48-53). Thus, the record refutes the claim that Petitioner suffered from diminished mental capacity, either at the time of the offense conduct or during the proceedings.[12]

Thus, Petitioner's proposed supplemental claim would be subject to immediate dismissal or summary denial. Cockrell, 510 F.3d at 1310. As such, the proposed supplemental claim is futile.

## V.    Conclusion

Having considered each claim for relief in the § 2255 Motion, the Supplement, and the Second Motion for Leave to Supplement, and finding that none of the claims warrants relief, it is hereby **ORDERED:**

1. Petitioner Dennis Gray Williams's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) and supplemental claims (Civ. Doc. 8-1) are **DENIED**.

2. Petitioner's Second Motion for Leave to File Supplemental Pleading (Civ. Doc. 17; Civ. Doc. 17-1) is **DENIED**.

3. The Clerk shall enter judgment in favor of the United States and against Petitioner, and close the file.

---

[12]    The Court also doubts that Petitioner states a claim that is cognizable under 28 U.S.C. § 2255(a). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief under § 2255. Addonizio, 442 U.S. at 184-86; Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc). Petitioner's freestanding claim that he had diminished mental capacity caused by sleep apnea, absent any claim of a constitutional or legal violation, alleges nothing of that sort.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 6th day of May, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:
Counsel of record
Pro se petitioner